**Fill in this information to identify your case:**

Debtor 1: Anika S. Barnes
 First Name / Middle Name / Last Name

Debtor 2: _____
(Spouse, if filing) First Name / Middle Name / Last Name

United States Bankruptcy Court for the: Western District of Louisiana

Case number 18-BK-10478
(If known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement
12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. Who is the creditor?  
   Tower Loan of South Shreveport  
   Name of the creditor

2. How much is the debt?  
   On the date that the bankruptcy case is filed  $ 2,618.52  
   To be paid under the reaffirmation agreement  $ 2,600.00  
   $ 200.00 per month for 13 months (if fixed interest rate)

3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)  
   Before the bankruptcy case was filed _____ %  
   Under the reaffirmation agreement 0.00 % ☒ Fixed rate  ☐ Adjustable rate

4. Does collateral secure the debt?  
   ☐ No  
   ☐ Yes. Describe the collateral. _____  
   Current market value $ _____

5. Does the creditor assert that the debt is nondischargeable?  
   ☐ No  
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.

   Income and expenses reported on Schedules I and J

   6a. Combined monthly income from line 12 of Schedule I  $ 2,966.89

   6b. Monthly expenses from line 22c of Schedule J  $ 2,966.89

   6c. Monthly payments on all reaffirmed debts not listed on Schedule J  − $ 0

   6d. Scheduled net monthly income  $ 0  
   Subtract lines 6b and 6c from 6a.  
   If the total is less than 0, put the number in brackets.

   Income and expenses stated on the reaffirmation agreement

   6e. Monthly income from all sources after payroll deductions  $ 2,966.89

   6f. Monthly expenses  − $ 2,966.89

   6g. Monthly payments on all reaffirmed debts not included in monthly expenses  − $ 0

   6h. Present net monthly income  $ 0  
   Subtract lines 6f and 6g from 6e.  
   If the total is less than 0, put the number in brackets.

Debtor 1   Anika S. Barnes
           First Name   Middle Name   Last Name

Case number (if known) 18-BK-10478

7. Are the income amounts on lines 6a and 6o different?
☒ No
☐ Yes. Explain why they are different and complete line 10. _____

8. Are the expense amounts on lines 6b and 6f different?
☒ No
☐ Yes. Explain why they are different and complete line 10. _____

9. Is the net monthly income in line 6h less than 0?
☒ No
☐ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.

10. Debtor's certification about lines 7-9

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

X /s/ Anika Barnes
Signature of Debtor 1

X _____
Signature of Debtor 2 (Spouse Only in a Joint Case)

11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?
☐ No
☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
   ☐ No
   ☒ Yes

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

X /s/ _____
Signature

Date 04/09/2018
MM / DD / YYYY

Kevin J. Payne
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

B2400A/B ALT (Form 2400A/B ALT) (12/15)

☐ Presumption of Undue Hardship
☒ No Presumption of Undue Hardship
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
### Western District of Louisiana

In re  Anika S. Barnes,  Case No. 18-BK-10478
Debtor  Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)

☒ Part B: Reaffirmation Agreement

☒ Part C: Certification by Debtor's Attorney

☒ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☐ Part E: Motion for Court Approval

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. Note also: If you complete Part E, you must prepare and file Form 2400C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:** Tower Loan of South Shreveport

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

1. **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

## AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm:  $ 2,600.00

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

B2400A/B ALT (Form 2400A/B ALT) (12/15)      2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways depending on the type of debt.]*

     a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

     (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

--- And/Or ---

     (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

     b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

     (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: __0__%.

--- And/Or ---

     (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

B2400A/B ALT (Form 2400A/B ALT) (12/15)     3

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| PMSI Loan | Dated 04/06/2017 $6,853.68 |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $_____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— *Or* —

Your payment schedule will be: __13__ (number) payments in the amount of $ __200.00__ each, payable (monthly, annually, weekly, etc.) on the __15th__ (day) of each __month__ ( week, month, etc.), unless altered later by mutual agreement in writing.

— *Or* —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

**2. INSTRUCTIONS AND NOTICE TO DEBTOR**

B2400A/B ALT (Form 2400A/B ALT) (12/15) 4

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

B2400A/B ALT (Form 2400A/B ALT) (12/15)  5

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

B2400A/B ALT (Form 2400A/B ALT) (12/15) 6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

PMSI Loan          Dated 04/06/2017   $6,853.68

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

X _Anika Barnes_
(Print Name)

X _Anika Barnes_
(Signature)

X Date: _4-27-18_

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)

Date: _____

Accepted by creditor:

_Tower Loan of South Shreveport_
(Printed Name of Creditor)

_8201 Jewella Ave, #122, Shreveport, LA 71108_
(Address of Creditor)

_/S/Kevin J. Payne_
(Signature)

_Kevin J. Payne_
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:
_04/09/2018_

B2400A/B ALT (Form 2400A/B ALT) (12/15) 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Michele S. Cook

Signature of Debtor's Attorney: Michele S. Cook

Date: 4/27/18

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                          8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $2,946.96, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $2,746, leaving $200 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____
_____
_____

(Use an additional page if needed for a full explanation.)

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

X Signed: _____Anika Barnes_____
         (Debtor)

         _____
         (Joint Debtor, if any)
Date: 4-27-18

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
        (Debtor)

        _____
        (Joint Debtor, if any)
Date: _____

B2400A/B ALT (Form 2400A/B ALT) (12/15) 9

### PART E: MOTION FOR COURT APPROVAL
*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

### MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes*):

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _____
(Debtor)

_____
(Joint Debtor, if any)

Date: _____

# RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT

Date of Contract: 4/6/2017

### BUYER

| LAST NAME | FIRST | INITIAL | ACCOUNT NUMBER |
|---|---|---|---|
| BARNES | ANIKA | | |
| LAST NAME | FIRST | INITIAL | |

STREET ADDRESS: 6800 RASBERRY LANE #2208
CITY: SHREVEPORT  STATE: LA  ZIP: 71129

### SELLER

NAME: IVAN SMITH (3186 748)
SALESMAN: RIC
STREET ADDRESS: 6930 PINES RD
CITY: SHREVEPORT  STATE: LA  ZIP: 71129

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $ 0.00 |
| 23.99 % | $ 2,001.02 | $ 4,852.66 | $ 6,853.68 | $ 6,853.68 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 36 | 190.38 | Monthly Beginning 05/06/2017 |

**Security:** You are giving a security interest in the goods or property being purchased.
**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.
**Late Charge:** If a payment is more than 10 days late, you will be charged 5% of the payment amount or $10.00, whichever is greater.

See your contract documents for any additional information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (Including sales tax) $ 4,852.66
2. Cash Downpayment $ 0.00
   Total Downpayment $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A $ 0.00
   b. N/A $ 0.00
   Total Paid to Others on Your Behalf $ 0.00
4. Unpaid Balance (1-2+3) $ 4,852.66
5. Amount Financed (4) $ 4,852.66

### DESCRIPTION OF GOODS OR SERVICES (collectively, the "GOODS")

home furnishings

SEE ATTACHED INVOICE SC 0446737-U92 504687391 04/17

## INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

**PARTIES:** "Buyer" means all Buyers signing this contract whether one or more; "Seller" means the Seller signing this contract and any successors and assigns thereof, including without limitation any creditor that purchases this contract.
**NOTE:** For value received, pursuant to the terms and conditions hereof (including those on the additional pages of this contract), Buyer purchases the Goods described above and agrees to pay to the order of Seller or Seller's assignee, at the office of the holder of this contract, the Total of Payments according to the schedule of payments set out above. If there is more than one Buyer, then each agrees that they are jointly and severally liable for payment of the Goods described above.
**DEFAULT:** Buyer shall be in default hereunder when: (i) Buyer defaults in payment of performance of any obligation or covenant herein; or (ii) upon loss, theft, substantial damage or destruction of the Goods; or (iii) when Seller reasonably deems itself insecure.
**REMEDIES:** Upon default, and if required, at any time thereafter, Seller may (i) declare the entire unpaid balance immediately due and payable, at the option of the holder hereof, without notice or demand; and (ii) cause all or any part of the Goods to be seized and sold under nonjudicial foreclosure or sale, or executory or other legal process issued by any court of competent jurisdiction, with or without appraisement, at the option of the holder, to the highest bidder for cash. Buyer shall pay all costs of collection, including court costs and reasonable attorney's fees.

For purposes of foreclosure by executory process, Buyer hereby confesses judgment in favor of the holder for the full amount of the indebtedness, together with all attorney's fees and costs, and any and all monies that may become due to the holder under the terms hereof or secured hereby. Buyer further waives the benefit of appraisement provided for in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, to the extent applicable, and all other laws conferring the same; the demand and three (3) days notice of demand as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; the notice of seizure provided by Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and the three (3) days delay provided for in Articles 2331 and 2722 of the Louisiana Code of Civil Procedure.
**LATE CHARGE:** Buyer shall pay Seller a late charge, the greater of $10.00 or 5% of the unpaid payment with respect to any payment that continues unpaid for more than ten (10) days following its scheduled date or deferral date.

**TITLE:** Title to said Goods shall not pass to Buyer until the balance is fully paid. In consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the undersigned (whether one or more) has granted, and by these presents does hereby grant unto Seller a purchase money security interest pursuant to Section 9-309(1) of the Revised Article 9 of the Uniform Commercial Code, in the Goods and any and all additions and accessories thereto and proceeds and products thereof to secure the payment in performance of Buyer's obligations hereunder.
**CREDITORS:** If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Louisiana LLC, ("Tower"), P.O. Box 320091, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.
**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
**REFUND FOR REPAYMENT IN FULL:** If Buyer pays in full (by cash, renewal or otherwise) before the last payment is due, Seller shall pay Buyer a refund of unearned finance charges, excluding the origination and documentation fees, as follows: (i) If paid before the expiration of one-half (1/2) of the term of the loan, the refund shall be computed on the Rule of 78s after first deducting a prepayment charge of $25.00, or (ii) If paid after the expiration of one-half (1/2) of the term of the loan, the refund shall be computed according to the Rule of 78s.
**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.

**FINANCE CHARGE REFUND OPTION** (Dealer checks one if applicable) [ ] 90 days  [ ] 180 days  [ ] 305 days  [X] 730 days.
If any of the boxes above are checked, then the following additional terms apply: If Buyer pays the entire Amount Financed set forth above and any late fees within the number of days shown in the box checked above (the "Option Period") Seller shall refund to Buyer all finance charges paid by Buyer. During the Option Period, Buyer must timely make all scheduled payments, and failure to do so is a default under this contract. In addition to all other remedies available to Seller upon Buyer's default, if, during the Option Period, Buyer fails to make any scheduled payment within thirty (30) days after its scheduled due date, the finance charge refund option shall automatically terminate, and Seller shall have no obligation to refund any finance charges to Buyer under such option. The Option Period starts on the date the contract is signed.

**THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS FOR WHICH YOU ARE RESPONSIBLE.**

LA RISC 01/16

PAGE 1 OF 3 PAGES

Buyer shall keep the Goods free from any adverse lien, security interest, or encumbrance and in good order and repair. Buyer shall not use the Goods in violation of any law, and Buyer shall not sell or transfer the Goods without the written consent of Seller.

Said Goods will be located and situated at the residence of Buyer(s) as shown above, unless otherwise stated herein _____ and shall not be removed from the premises, nor in any way disposed of without the written consent of the Seller. The undersigned further covenant and agree to keep the Goods fully insured against loss by fire, theft and collision or other casualty (as applicable) loss, if any, payable to Seller as his interest may appear. Buyer shall pay promptly when due all taxes and assessments upon the Goods. Seller may inspect the Goods at any time, wherever located.

At its option, Seller may discharge taxes, liens, security interest, and other encumbrances on the Goods, may pay for the insurance coverage on the Goods and may pay for the maintenance and preservation of the Goods. Buyer shall reimburse Seller on demand for any such payments made by Seller, and Seller shall be entitled to interest on such payments at 12% per annum.

READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.

By making this loan, Lender binds itself to this arbitration agreement.

The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

Arbitration is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:

(1) Except as otherwise set forth below, this arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
 • The consumer credit contract Buyer is obtaining from Seller today and any other retail installment contracts with Seller;
 • Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
 • Any other product or service purchased in connection with this consumer credit contract;
 • Whether the claim or dispute must be arbitrated;
 • The validity of this arbitration agreement;
 • Any negotiations or discussions between us;
 • All claims or disputes based upon Federal or State laws or regulations;
 • Class action types of claims and consolidated claims;
 • Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, tort, bad faith, and demands for punitive damages or attorneys fees.

(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties, The Parties agents, employees, affiliated entities and the employees or agents of these affiliated entities.

(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.

(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5) shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.

(5) The arbitration shall be held in Caddo Parish, Louisiana, unless the responding party in his, her or its answering statement requests the arbitration be held in his, her or its parish of residence or principal place of business.

(6) Except as they conflict with this arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.

(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.

(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys fees and costs). Seller is not required to initiate arbitration before initiating a suit for money owed by Buyer, repossessing or foreclosing upon collateral including executory or ordinary process, and lender reserves the right to obtain a money judgment against Buyer and pursue the seizure, sale and other related remedies in the courts. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.

(9) If either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes or action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.

(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.

(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.

(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator.

This agreement does not affect or extend any applicable statutes of limitation

_Ethel Brasley_  _[signature]_
Witness  Buyer

By: _Ivan Smith Furniture_  _____
Seller  Buyer

This document is subject to a security interest in favor of BANK OF AMERICA, N.A., AS AGENT.

Buyer has read and understands all of the additional terms contained on all of the pages hereof and agrees that they are part hereof as if set forth at this point.

This agreement consist of 3 pages.

LA RISC 01/16

PAGE 2 OF 3 PAGES

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to ___TOWER LOAN___ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and or the Federal Reserve Board on consumer credit, the Gramm Leach Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are true and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for rebate, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim, or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and all attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase the contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the ___23rd___ day of ___April___ 2017

_Ivan Smith Furniture_
Seller
By: _Ricky Candler_

LA RISC 01/16

PAGE 3 OF 3 PAGES

# Ivan Smith FURNITURE
Saving you more on the look you want.
Appliances • HDTV's • Bedding

ANIKA BARNES
6800 RASBERRY LANE #2205

SHREVEPORT, LA 71129
Home: 318-682-5448 Phone: 936-275-8855
Email: abarnes52@hotmail.com
Customer Code: BARNA43958

Sales Order #6406737FU92
Store: IVAN SMITH FURNITURE SHREVEPORT 37
Service & Delivery Phone #: 318-683-3271
Store Phone #:318-687-1936
Delivery Date: 04/20/2017 (Delivery)
Purchased: 04/06/2017 06:43 PM
Salesperson: RICKY CANDLER

| Qty | Location | Product | Vendor Stock #/Desc | Retail |
|-----|----------|---------|---------------------|--------|
| 1 |  | P22733 | CORO PKG 2255+2273+2275+2286 4PC WALL UNIT MERLOT | $799.99 |
| 1 | On Order | 227336 | CORO 2273 (D)LEFT B'CASE BORDEAUX | INCL |
| 1 | On Order | 227332 | CORO 2286 (D)BRIDGE BORDEAUX BREEZE | INCL |
| 1 | DC : STOCK | 387819 | HSTR 154-23-10 RECL LOVE W/CONS STONE | $799.99 |
| 1 | DC : STOCK | 826472 | SAMU 8264-272 (C)HDBD KING PECAN SLEIGH | INCL |
| 1 | DC : STOCK | 826408 | SAMU 8264-508 (C)RAILS QUEEN/KING PECAN SLEI | INCL |
| 1 |  | FCP123 | FCAR FURNITURE CARE PROTECTION | $299.99 |

Items may be returned at time of delivery for a refund, minus a 10% restocking fee and delivery charge. Merchandise picked up, by customer, must be returned by next business day. A 10% restocking fee will be assessed. All merchandise must be returned in same condition as it was received. Special orders, close-outs, "as-is", sale merchandise and mattresses are non-refundable. Visit our web site at ivansmith.com/customerservice for a full copy of our warranties, return and service policies.

Financing Information

Finance Co.: TOWER LOANS
Financed Amt.: $4,120.54
Account #: ********9385

Promo: 36730 24 MONTH SAME AS CASH
Auth Code: Success

Subtotal $3,719.94
Delivery $89.99
Sales Tax $310.61
Total $4,120.54
Balance Due $0.00
See Disclosure Statement For Details
Financed Amt: $4,120.54
Fin. Promo. Code: 36730 24 MONTH SAME AS CASH

Customer Signature: *Anika Barnes*

I agree to pay the above total amount in accordance with the Provider Agreement.

Page 1

# Ivan Smith
## FURNITURE
Saving you more on the look you want.
Appliances • HDTV's • Bedding

**ANIKA BARNES**
5646 S LAKESHORE DR 21

SHREVEPORT, LA 71119
Home: 936-275-8855 Phone: 318-682-5498
Email: abarnes52@hotmail.com
Customer Code: BARNA43855

Sales Order #0408737GO47
Store: IVAN SMITH FURNITURE SHREVEPORT 37
Service & Delivery Phone #: 318-683-3271
Store Phone #:318-687-1935
Delivery Date: 04/20/2017 (Delivery)
Purchased: 04/08/2017 02:52 PM
Salesperson: RICKY CANDLER

| Qty | Location | Product | Vendor Stock #/Desc. | Retail |
|---|---|---|---|---|
| 1 | 37 : SHW | 172820 | STAN 17282 (M)7PC TABLE/CHAIRS 1BOX WESTL | $667.00 |

Items may be returned at time of delivery for a refund, minus a 10% restocking fee and delivery charge. Merchandise picked up by customer, must be returned by next business day. A 10% restocking fee will be assessed. All merchandise must be returned in same condition as it was received. Special orders, close-outs, "as-is", sale merchandise and mattresses are non-refundable. Visit our web site at ivansmith.com/customerservice for a full copy of our warranties, return and service policies.

**Financing Information**

Finance Co.: TOWER LOANS
Financed Amt.: $732.12
Account #: **********6385

Promo: 36730 24 MONTH SAME AS CASH
Auth Code: Success

Customer Signature: _[signature]_

I agree to pay the above total amount
in accordance with the Provider Agreement.
[X] I DECLINE the 4 year protection promise offered to me, even though it is refunded if not used.
Acknowledgement Signature:

_[signature]_

Subtotal $667.0
Delivery $0.0
Sales Tax $64.1
Total $732.1
Balance Due $0.0
See Disclosure Statement For Detail
Financed Amt: $732.1
Fin. Promo. Code: 36730 24 MONTH SAME AS CASH

Page 1